## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MICHAEL J. HICKS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| vs. | ) | **No. 04-CV-656-JHP-SAJ** |
| | ) | |
| **JUSTIN JONES,[1] Director,** | ) | **No. 04-CV-658-JHP-PJC** |
| **Oklahoma Department of Corrections,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### OPINION AND ORDER

This is a consolidated 28 U.S.C. § 2254 habeas corpus proceeding.[2] Petitioner is a state

inmate represented by counsel. Respondent filed a response to the petition (Dkt. # 11). Respondent

also provided state court records and trial transcripts (Dkt. #s 12 and 19) for the Court's use in

evaluating Petitioner's claims. Petitioner filed a reply to Respondent's response (Dkt. # 15). For the

reasons discussed below, the Court finds the petition should be denied.

### *BACKGROUND*

On June 26, 1999, Petitioner, Michael J. Hicks, and his wife, Merrie Lynn Hicks, were

returning to their home in Bartlesville, Oklahoma, after spending the afternoon in Tulsa. Sometime

after 6 p.m., the car being driven by Petitioner left the roadway and plunged off a cliff into the

Caney River. Petitioner survived the car crash, his wife did not. The cause of death was drowning.

---

[1]Justin Jones, the current Director of the Oklahoma Department of Corrections, is hereby substituted as Respondent in place of Ron Ward.

[2]The petition filed in N.D. Case No. 04-CV-658-JHP-SAJ was submitted by Petitioner Michael J. Hicks appearing *pro se* and identifies the same grounds of error as the petition filed in N.D. Case No. 04-CV-656-JHP-SAJ by attorney Matt Dowling on behalf of Petitioner Michael J. Hicks. The two actions were consolidated by Order filed September 3, 2004.

Toxicology results indicated the victim had elevated blood levels of prescription medications sufficient to produce significant sedation.

Following an investigation, Petitioner was charged with First Degree Murder in Washington County District Court, Case No. CF-1999-636.  Petitioner was represented by retained counsel, Kevin D. Buchanan. At the conclusion of a jury trial, held July 24 – August 8, 2000, Petitioner was found guilty as charged. The jury recommended that Petitioner be sentenced  to life imprisonment without the possibility of parole. On August 25, 2000, Petitioner filed a motion for new trial and motion in arrest of judgment. (Dkt. # 12, Ex. 8, attachment). On September 1, 2000, the trial court judge denied the motions for new trial and in arrest of judgment and sentenced Petitioner in accordance with the jury's recommendation.  Judgment was filed on October 16, 2000. (Dkt. # 12, Ex. 8)

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals ("OCCA").  On appeal, Petitioner continued to be represented by attorney Kevin D. Buchanan. He raised four (4) propositions of error as follows:

| | |
|---|---|
| Proposition 1: | The trial court erred in allowing the State to play one and one-half hours of tape recorded phone conversations between the Appellant and the State's cooperating witness. |
| Proposition 2: | The Appellant's conviction for First Degree Murder is not supported by the State's evidence. |
| Proposition 3: | The trial court erred in denying Appellant's request to have the jury view the accident scene. |
| Proposition 4: | The trial court erred in allowing the State to attempt to impeachment [sic] its own witness concerning evidence provided through discovery. |

(Dkt. # 12, Ex. 5).  In an unpublished opinion, filed September 27, 2001, in Case No. F-2000-1192 (Dkt. # 12, Ex. 1), the OCCA found none of Petitioner's allegations of error had merit and affirmed the Judgment and Sentence of the trial court.  Nothing in the record suggests Petitioner filed a petition for writ of *certiorari* in the United States Supreme Court.

On September 13, 2002,[3] Petitioner, represented by attorney Matt Dowling, filed an application for post-conviction relief. Petitioner filed an amendment to the original application on March 31, 2003. After holding an evidentiary hearing on January 21, 2004, see Dkt. # 12, Ex. 17, and by order filed February 4, 2004, the state district court denied the requested relief, finding the three propositions of error were without merit as a matter of law. See Dkt. # 12, Ex. 2 Petitioner appealed to the OCCA where he raised three (3) propositions of error, as follows:

> Proposition 1:  The procedural bar of waiver does not preclude the Appellant from asserting the deficiencies of the trial court and ineffective assistance of counsel.
>
> Proposition 2:  The trial court erred by failing to instruct the jury on the lesser included offenses to Murder in the First Degree or to obtain an informed waiver of Appellant's right to have such instructions given.
>
> Proposition 3:  Counsel for the Appellant on both the trial and appellate level which was one and the same, was ineffective creating fundamental error requiring the granting of post conviction relief.

Dkt. # 12, Ex. 3. By order filed May 11, 2004, in PC-2004-208, the OCCA affirmed the denial of post-conviction relief.  Dkt. # 12, Ex. 4.

On August 23, 2004, Petitioner, continuing to be represented by attorney Matt Dowling, filed his federal petition for writ of habeas corpus (Dkt. # 1) along with a supporting brief (Dkt. # 2). He identifies five (5) grounds of error, as follows:

---

[3]Date of filing obtained from the docket sheet for Washington County District Court, Case No. CF-1999-636, viewed at www.odcr.com.

Ground 1:    Trial court errors regarding jury instructions rendered petitioner's trial fundamentally unfair, depriving petitioner of due process, in violation of U.S. Const. 5th & 14th Amendments.

Ground 2:    Trial counsel was ineffective, depriving petitioner of assistance of counsel, in violation of U.S. Const. 6th Amendment.

Ground 3:    Appellate counsel was ineffective, depriving petitioner of assistance of counsel, in violation of U.S. Const. 6th Amendment.

Ground 4:    Trial court evidentiary errors rendered petitioner's trial fundamentally unfair, depriving petitioner of due process, in violation of U.S. 5th & 14th Amendments.

Ground 5:    Petitioner's conviction is not supported by state's evidence, depriving petitioner of due process, in violation of U.S. Const. 5th & 14th Amendments.

(Dkt. #s 1 and 2). In response to the petition, Respondent concedes that the petition is timely and asserts that Petitioner is not entitled to habeas corpus relief.

### *ANALYSIS*

**A.  Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). The Court finds that the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied in this case.  In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See Michael Williams v. Taylor, 529 U.S. 420 (2000).

**B.  Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain

federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 150-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

The OCCA adjudicated Petitioner's challenge to evidentiary rulings (ground 4) and his challenge to the sufficiency of the evidence (ground 5) on direct appeal, and his claim of ineffective assistance of appellate counsel (ground 3) on post-conviction appeal. As a result, Petitioner must satisfy the 28 U.S.C. § 2254(d) standard to be entitled to habeas corpus relief on those claims.

### 1. Insufficient evidence (ground five)

As his fifth proposition of error, Petitioner argues that the evidence presented to the jury was circumstantial and insufficient to support his conviction. In particular, Petitioner asserts that the state failed to prove the cause and intent elements required for Murder in the First Degree. He argues, as he did at trial, that his wife's death was the result of a tragic accident. See Dkt. # 2 at 21. On direct appeal, the OCCA agreed with Petitioner that "all of the evidence offered by the State to prove the crime charged was circumstantial," and proceeded to hold as follows:

> There was, as Appellant suggests, conflicting testimony about some details surrounding the accident. However, when all of the evidence is viewed cumulatively, in the light most favorable to the State, a rational trier of fact could have found that the evidence excluded every reasonable hypothesis except that Appellant committed the crime charged. The circumstantial evidence showed that Appellant was involved in an unfulfilling marriage from which he would not escape by means of divorce so he planned and carried out the murder of his wife by driving the car, while she was sedated, off the highway and toward the river and he exited the car before it went over the cliff and into the river where his wife drowned. As there was sufficient competent evidence to support Appellant's conviction we will not disturb the jury's verdict.

(Dkt. # 12, Ex. 1 at 9).  As noted by Respondent, the OCCA found sufficient evidence supporting the conviction even under the more rigorous "reasonable hypothesis test," which has since been rejected by the OCCA in favor of the sufficiency test which applies to both direct and circumstantial evidence. See Easlick v. State, 90 P.3d 556, 559 (Okla. Crim. App. 2004). Respondent asserts that the OCCA's decision was not contrary to, or an unreasonable application of, federal law. (Dkt. # 11 at 32).

A writ of habeas corpus will not issue unless the state court's legal conclusions are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or the state court's factual conclusions are "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Tenth Circuit authority is divided as to "whether, under AEDPA, we review a sufficiency-of-the-evidence issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual finding under § 2254(d)(2) and (e)(1)." Romano v. Gibson, 239 F.3d 1156, 1164 n.2 (10th Cir. 2001); see also Dockins v. Hines, 374 F.3d 935, 939 (10th Cir.

6

2004); <u>Torres v. Mullin</u>, 317 F.3d 1145, 1151 (10th Cir. 2003). Under either standard, Petitioner's claim in this case fails.

In a habeas proceeding, this Court must review the sufficiency of the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Significant to Petitioner's argument, both direct and circumstantial evidence are considered in determining whether evidence is sufficient to support a conviction. <u>Lucero v. Kerby</u>, 133 F.3d 1299, 1312 (10th Cir. 1998). Further, the Court evaluates the sufficiency of the evidence by "consider[ing] the collective inferences to be drawn from the evidence as a whole." <u>United States v. Wilson</u>, 107 F.3d 774, 778 (10th Cir. 1997) (quoting <u>United States v. Hooks</u>, 780 F.2d 1526, 1532 (10th Cir. 1986)). The Court does not weigh conflicting evidence or consider witness credibility. <u>Wingfield v. Massie</u>, 122 F.3d 1329, 1332 (10th Cir. 1997); <u>Messer v. Roberts</u>, 74 F.3d 1009, 1013 (10th Cir. 1996).  This standard of review respects the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the testimony presented at trial. <u>Jackson</u>, 443 U.S. at 319. Under the AEDPA, the Court must decide whether the OCCA's finding that there was sufficient evidence to support a jury's guilty verdict was contrary to or an unreasonable application of <u>Jackson</u>. See 28 U.S.C. § 2254(d)(1); <u>Spears v. Mullin</u>, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

Applying this standard, this Court concludes that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. Oklahoma law in effect at the time of Petitioner's crime provided that "[a] person commits murder in the first degree when that person unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention

unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof." Okla. Stat. tit. 21, § 701.7(A). A jury may infer intent from a defendant's objective acts.  See Torres v. Mullin, 317 F.3d 1145, 1154 (10th Cir. 2003) (citing Wingfield v. Massie, 122 F.3d 1329, 1333 (10th Cir. 1997). "[E]ven when a defendant, as here, denies having the requisite intent, a jury may disbelieve the defendant if his words and acts in the light of all the circumstances make his explanation seem improbable." Wingfield, 122 F.3d at 1333 (quotation omitted).

Petitioner argues that the State's evidence was insufficient to satisfy the intent element required for a First Degree Murder conviction. Contrary to Petitioner's argument, however, the Court finds that there was sufficient evidence to allow a rational jury to draw reasonable inferences and conclude that Petitioner willfully or maliciously caused the death of his wife.  At trial, Petitioner testified in his own defense, see Dkt. # 12, Ex. 15, Tr. Trans. Vol. VII at 1374-1472, and told the jury that he was dissatisfied with his marriage but would not divorce his wife. He testified that in early 1999, his wife was hospitalized as suicidal. Id. at 1377-78.  During that hospitalization, he told his wife he did not love her anymore but assured her that "as long as she wanted to be with me she had a place in our home." Id. at 1379, 1383, 1465. Petitioner also testified that he told his three children about his three (3) year long affair with Marsha Greenland shortly before the preliminary hearing held in his criminal case. Id. at 1468. In recounting the accident, Petitioner told the jury that he had set the cruise control to 72 m.p.h. and that he must have fallen asleep because the car left the roadway, went off the cliff and into the Caney River. See id. at 1402, 1404, 1407-08. Petitioner said that he went into the river with the car but had been able to escape through the driver's side window.

8

Id. at 1408. Despite his efforts, he was unable to find his wife. Id. at 1408-09. Petitioner testified that it was his fault that the car left the roadway, but that it was unintended. Id. at 1416.

However, the jury also heard the testimony of Karilyn "Kiki" Summers.  See Dkt. # 12, Ex. 13, Tr. Trans. Vol. V at 976-1009. Ms. Summers testified that she began working with Petitioner in conjunction with his photography business in the spring of 1995, and that they became "good friends." Id. at 978-79. She testified that she had two (2) sexual encounters with Petitioner, the last one being in 1996. Id. at 983. Ms. Summers also told the jury that during the fall of 1998, or several months before the accident, Petitioner told her in a telephone conversation that "as he was driving home there was a river to the side of him and that he had realized that he could very easily just drive the car off the road; that he would be able to jump out, and that she was lying down in the back of the van, that she was on medication, she was incapacitated, and that she could just continue and -- to go over a cliff and that he would be done with that." Id. at 985.  She found Petitioner's comments "disturbing" and she attempted to "pull back from the relationship." Id. at 985-86. Petitioner called her on Monday, June 28, 1999, or 2 days after the accident, to tell her he had been in a car accident with his wife and that she "had not made it." Id. at 986. Ms. Summers called the Bartlesville Police Department to tell them that "Mike told me about this ahead of time." Id. at 990. She agreed to give a tape recorded statement and to tape a telephone conversation with Petitioner to confirm their prior conversation. Id. at 991. The tape recorded conversations between Ms. Summers and Petitioner were played for the jury. Id. at 995.

The State also presented testimony of Joseph Hancock, a Maryland State Police Officer working for the Crash Reconstruction Unit, who determined that the accident could not have happened as described by Petitioner. See Dkt. # 12, Ex. 11, Vol. III at 519-723. Hancock went to

9

the crash scene on August 21, 1999. He determined that tire prints at the scene indicated the vehicle was rolling, not braking. Id. at 532. The path of the vehicle required conscious input from the driver in the form of at least 8 steering moves. Id. at 547-554. He testified that the necessary movements of the car could not be done at 72 m.p.h., and estimated that the car was actually traveling at less than 25 m.p.h. Id. at 559-61.  He also determined that the "sheer capsules" on the car's steering column were intact indicating there was no pressure on the steering wheel. Id. at 578. Based on measurements from the scene of the accident and from the vehicle recovered by divers from the Caney River, Hancock stated his opinion that Petitioner was not in the vehicle when it plunged off the cliff into the river, the only occupant was Merrie Lynn Hicks, and there was no indication that either seat belt was in use. Id. at 608.

The jury also heard substantial circumstantial evidence from which they could infer that the accident did not take place as described by Petitioner. Several witnesses present at the scene immediately after the accident testified they observed no mud, no scratches, and no obvious or significant injuries on Petitioner.  See Dkt. # 12, Ex. 9 and 10, Tr. Trans. Vols. I and II at 55-56, 70-71, 96, 113, 132, 156-57, 339.  Their observations were unexpected since the area had recently received rain, the river was bank full and flowing rapidly, and the riverbank was steep and very muddy.  Id. at 59, 72-73, 97, 115, 118-19, 173, 189.  The CT technician at the hospital where Petitioner was taken after the accident also testified that he did not observe any scratches or abrasions on Petitioner and that Petitioner was not muddy or wet. Id. at 201, 203.

The Court concludes that the evidence, when viewed in a light most favorable to the State, was sufficient to allow the jury as a rational trier of fact to have found the essential elements, including the intent element, of Murder in the First Degree beyond a reasonable doubt.  Petitioner

has failed to demonstrate that the OCCA's resolution of this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, 28 U.S.C. § 2254(d)(1), or an unreasonable determination of the facts, 28 U.S.C. § 2254(d)(2). See Dockins, 374 F.3d at 939 (recognizing that the Tenth Circuit has not clearly settled whether sufficiency of the evidence on habeas review presents a question of law or fact). As a result, the Court finds habeas corpus relief should be denied on this claim.

### 2. Ineffective assistance of appellate counsel (ground 3)

As his third proposition of error, Petitioner asserts that his appellate counsel provided ineffective assistance in omitting a claim that the trial court erred in failing to instruct on lesser included offenses and that trial counsel provided ineffective assistance in failing to request lesser included offense instructions. Based on his admissions that at the time of the accident, he was speeding, driving 72 m.p.h. where the speed limit was 70 m.p.h., and that he fell asleep while driving, Petitioner argues the evidence supported instructing the jury on the lesser included offense of Negligent Homicide.[4] Therefore, Petitioner claims, as he did on post-conviction appeal, that appellate counsel provided ineffective assistance in omitting challenges to the trial court's failure to instruct on the lesser included offense and trial counsel's failure to request a lesser included offense instruction.  In affirming the district court's denial of post-conviction relief, the OCCA

---

[4]Oklahoma law provides that "[w]hen the death of any person ensues within one (1) year as a proximate result of injury received by the driving of any vehicle by any person in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide." Okla. Stat. tit. 47, § 11-903.  The OCCA has held that the negligent homicide provision precludes prosecution for second degree manslaughter under Okla. Stat. tit. 21, § 716, when a motor vehicle is involved.  Atchley v. State, 473 P.2d 286, 290 (Okla. Crim. App. 1970).

applied <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and ruled that Petitioner was not denied the

effective assistance of appellate counsel. Specifically, the OCCA found as follows:

> Petitioner has cited no authority which establishes that driving a few miles per hour over the speed limit would constitute reckless disregard of the safety of others, or culpable negligence, warranting instructions on Second Degree Manslaughter, or Negligent Homicide in his case. 21 O.S.2001, § 716; 47 O.S.2001, § 11-903. Moreover, regardless of lesser included offense instructions, Petitioner's jury not only found him guilty beyond a reasonable doubt of Murder in the First Degree, but also sentenced him to the maximum punishment possible. Therefore, Petitioner has not established either that the outcome of his appeal would have been different, or that he is factually innocent. *Strickland, supra.* Accordingly, the order of the District Court of Washington County denying Petitioner's application for post-conviction relief in Case No. CF-99-636 should be, and is hereby, **AFFIRMED**.

(Dkt. # 12, Ex. 4).

Petitioner is not entitled to relief on his claim of ineffective assistance of appellate counsel

unless he establishes that the OCCA's adjudication of the claim, as raised on post-conviction appeal,

was an unreasonable application of federal law as determined by the United States Supreme Court.

The applicable standard was established by the Supreme Court in <u>Strickland</u>, 466 U.S. at 687. The

<u>Strickland</u> test requires a showing of both deficient performance by counsel and prejudice to

Petitioner as a result of the deficient performance. <u>Id.</u> When a habeas petitioner alleges that his

appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the

Court first examines the merits of the omitted issue. <u>Hawkins v. Hannigan</u>, 185 F.3d 1146, 1152

(10th Cir. 1999).  If the omitted issue is meritless, then counsel's failure to raise it does not amount

to constitutionally ineffective assistance.  <u>Id.</u>; <u>see also</u> <u>Parker v. Champion</u>, 148 F.3d 1219, 1221

(10th Cir.1998) (citing <u>United States v. Cook</u>, 45 F.3d 388, 392-93 (10th Cir. 1995)). If the issue has

merit, the Court then must determine whether counsel's failure to raise the claim on direct appeal

was deficient and prejudicial. <u>Hawkins</u>, 185 F.3d at 1152; <u>see also</u> <u>Cook</u>, 45 F.3d at 394. The

relevant questions for assessing Petitioner's claim of ineffective assistance of appellate counsel are whether appellate counsel was "objectively unreasonable" in failing to raise the omitted claim on appeal and, if so, whether there is a "reasonable probability that, but for his counsel's unreasonable failure" to raise the claim, Petitioner "would have prevailed on his appeal."  Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001) (citing Smith v. Robbins, 528 U.S. 259, 285-86 (2000) (applying Strickland, 466 U.S. at 687-91)).

Upon review of the record in this case, the Court finds Petitioner has failed to establish that the OCCA's adjudication of the claim of ineffective assistance of appellate counsel was an unreasonable application of Strickland.  "[A]n instruction on a lesser included offense need only be given when there is evidence that tends to prove the lesser included offense was committed. Absent such evidence, an instruction should not be given." Darks v. Mullin, 327 F.3d 1001, 1008 (10th Cir. 2003); Duvall v. Reynolds, 139 F.3d 768, 785-86 (10th Cir. 1998) (citing Beck v. Alabama, 447 U.S. 625, 627 (1980)); Shrum v. State, 991 P.2d 1032 (Okla. Crim. App. 1999). To determine whether the evidence is sufficient to support a lesser offense, a court must examine whether the evidence "would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit him of the greater." See Hogan v. Gibson, 197 F.3d 1297, 1307 (10th Cir. 1999) (citing Beck v. Alabama, 447 U.S. 625, 636 (1980)). Only if there is evidence which tends to negate an element of the greater offense, which would reduce the charge, should instructions on a lesser included offense be given. See United States v. Scalf, 708 F.2d 1540, 1546 (10th Cir. 1983) ("a lesser included offense instruction should not be given unless there is evidence to support a finding that the lesser offense was committed while the greater offense was not").

13

Petitioner's appellate counsel did not perform deficiently in failing to raise the omitted claims on direct appeal because the claims lack merit. The evidence presented at Petitioner's trial did not warrant a lesser included offense instruction. As indicated above, Petitioner testified that he set his cruise control at 72 m.p.h. and that he must have fallen asleep just before his car left the roadway. <u>See</u> Dkt. # 12, Ex. 15, Tr. Trans. Vol. VII at 1402, 1404. In addition, several witnesses testified that Petitioner told them he had set his cruise control at 72 m.p.h., or two (2) miles per hour over the speed limit,[5] and that he fell asleep. No evidence suggested, however, that Petitioner acted with reckless disregard for the safety of others. There was no evidence suggesting excessive speed or conduct by Petitioner which a prudent man would recognize as affecting his ability to drive a car safely. For example, no evidence suggested Petitioner was sleep deprived or otherwise impaired at the time of the accident. No law supports the proposition that driving a car in excess of the speed limit necessarily constitutes reckless driving. The cases cited by Petitioner in support of the underlying claim all involved other evidence demonstrating reckless disregard for the safety of others.  <u>See</u> <u>Short v. State</u>, 560 P.2d 219, 221 (Okla. Crim. App. 1977) (evidence showed the defendant was driving in excess of 100 m.p.h. and was attempting to elude police when collision occurred resulting in death); <u>Bowers v. Wimberly</u>, 933 P.2d 312, 314 (Okla. 1997) (finding that in a civil case, sudden unforeseeable loss of consciousness was a defense to negligence); <u>Hopkins v. State</u>, 506 P.2d 580, 582 (Okla. Crim. App. 1973) (evidence indicated defendant had right arm in a cast and was driving car approximately 80 m.p.h. when he lost control and collided with deceased's automobile). As there was no evidence supporting the lesser included offense of

---

[5]The Court takes judicial notice that the speed limit on Highway 75 in the area of the bridge over the Caney River is 70 m.p.h.

negligent homicide, the omitted claims are meritless and Petitioner's appellate attorney did not perform deficiently in failing to raise them on direct appeal.  Petitioner has failed to establish entitlement to habeas corpus relief under 28 U.S.C. § 2254(d).

### 3. *Evidentiary rulings (ground 4)*

As his fourth proposition of error, Petitioner identifies three (3) evidentiary rulings by the trial court which allegedly rendered his trial fundamentally unfair resulting in a due process violation.  Petitioner claims that the trial court erred by: (1) allowing irrelevant and prejudicial tape recorded telephone conversations to be played to the jury, (2) refusing to allow the jury to view the scene of the accident, and (3) allowing the state to attempt to impeach its own witness concerning evidence provided through discovery.  See Dkt. # 2 at 18.  Petitioner challenged these evidentiary rulings on direct appeal.  Citing state law, the OCCA rejected each claim. First, the OCCA found that because the probative value of the tape recorded telephone conversations outweighed the danger of unfair prejudice, "the trial court did not abuse its discretion in allowing the jury to hear the conversations about Appellant's prior comment about the accident and his relationship with his girlfriend." See Dkt. # 12, Ex. 1.  As to the trial court's refusal to allow the jury to view the scene, the OCCA found that "the record amply supports the trial court's ruling that extensive testimony and exhibits described the scene of the accident giving the jury sufficient information about it," and that the trial court did not abuse its discretion in denying Petitioner's request. Id. Lastly, the OCCA found no error in the trial court's rulings allowing the state to impeach its own witness and finding no discovery violation.  Id.

Respondent asserts that the claims presented in Petitioner's ground four are not cognizable on habeas corpus review because they involve matters of state law. The Court agrees with

15

Respondent that Petitioner's challenge to the evidentiary rulings concerns matters of state law. A federal habeas court has no authority to review a state court's interpretation or application of its own state laws.  Estelle v. McGuire, 502 U.S. 62, 67-8 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id.  Accordingly, to the extent Petitioner's ground four challenge to the trial court's evidentiary rulings requires review of state law, the claim is not cognizable in this federal habeas corpus proceeding and should be denied on that basis.

Petitioner does allege in this habeas action, however, that his challenge to the trial court's evidentiary rulings is grounded in due process principles (Dkt. # 2 at 18). Habeas relief is available for a challenge to state court evidentiary rulings only if the rulings "rendered the trial so fundamentally unfair that a denial of constitutional rights results." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002); see also Spears v. Mullin, 343 F.3d 1215, 1225-26 (10th Cir. 2003); Smallwood v. Gibson, 191 F.3d 1257, 1275 (10th Cir. 1999).  The fundamental fairness analysis on habeas review is approached "with 'considerable self-restraint.'" Smallwood, 191 F.3d at 1275 (quoting Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir. 1998)).

Petitioner fails to establish that the evidentiary rulings rendered his trial fundamentally unfair. The OCCA's findings were not so arbitrary and capricious as to constitute an independent due process violation. Fields v. Gibson, 277 F.3d 1203, 1220 (10th Cir. 2002) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). As to Petitioner's challenge to the admission of the tape recorded conversations between himself and Karilyn Summers, the Court agrees with the OCCA's finding

that because the conversations were probative of Petitioner's intent and motive, the evidence was relevant and its admission did not violate due process principles.

Next, the Court agrees with the OCCA's finding that the record contains exhaustive and comprehensive evidence describing the scene of the accident. As a result, the trial court's refusal to allow the jury to view the scene of the accident did not render Petitioner's trial fundamentally unfair in violation of due process.

Lastly, Petitioner's complaint that the trial court erred in permitting the State to impeach it own witness resulting in a discovery violation does not rise to the level of a due process violation. The testimony at issue concerned photographs of the scene taken by Deputy James Winn.  Deputy Winn testified that the photographs were taken at the scene on June 26, 1999, shortly after the accident. See Dkt. # 12, Ex. 11, Tr. Trans. Vol. III at 429-31. The prosecution attempted to convince Deputy Winn that he was mistaken about the date of the photographs since they were actually taken on June 27, 1999, when the Hicks' vehicle was recovered from the river. See id. The prosecution also attempted to clarify the date of the photographs through the testimony of Edward Virden, the investigator for the Washington County District Attorney's Office. See Dkt. # 12, Ex. 13, Tr. Trans. Vol. at 947-49. At a bench conference, defense counsel argued his objection to the State's effort to impeach its own witness, characterizing the mistake as a discovery violation. Id. at 953-58. The trial court judge listened to defense counsel's argument and stated that "[t]hey're entitled to impeach their own witness in some respect if they want to." Id. at 957. The evidentiary ruling at issue did not render the trial fundamentally unfair. There is no clearly established constitutional right to non-exculpatory discovery. Gray v. Netherland, 518 U.S. 152, 167-68 (1996). So long as Petitioner had a meaningful "opportunity to deny or explain" the significance of the evidence, Gardner v.

Florida, 430 U.S. 349, 361 (1977), there is no clearly established due process violation. Gray, 518 U.S. at 169-70.  Even if Petitioner first learned of the actual date of the photographs in open court during the trial, he was free to contest it and/or elicit testimony concerning the impact of the date discrepancy to his defense.  In addition, Petitioner has shown no evidence of prejudice.

Because Petitioner presents no evidence that the admission of the challenged evidence rendered his trial fundamentally unfair, he is not entitled to habeas corpus relief on these claims.

## C.  Petitioner's remaining claims

### 1. Instructional error (ground 1)

As his first ground of error, Petitioner complains that the trial court erred in failing to instruct the jury on the lesser included offense of negligent homicide. Petitioner first raised this claim in his application for post-conviction relief.  The OCCA determined that the claim could have been but was not raised on direct appeal and refused to consider the claim. As a result, Respondent contends that this Court is precluded from considering this claim as a result of the state court's procedural bar.

The Tenth Circuit Court of Appeals has held that the failure of a state court to instruct on a lesser included offense in a noncapital case never raises a federal constitutional question. Lujan v. Tansy, 2 F.3d 1031, 1036 (10th Cir. 1993).  Tenth Circuit precedent establishes a rule of "automatic non-reviewability" for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction.  Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004) (stating that neither the Tenth Circuit nor the United States Supreme Court has ever recognized a federal constitutional right to a lesser included offense instruction in non-capital cases).  Accordingly, regardless of the procedural posture of this claim,  habeas relief shall be denied on Petitioner's claim

18

that his constitutional rights were violated because the trial court failed to give jury instructions on a lesser included offense.

### 2.   *Ineffective assistance of trial counsel (ground 2)*

As his second proposition of error, Petitioner alleges that his trial counsel provided ineffective assistance in failing to request instructions for lesser included offenses.  As part of this claim, Petitioner asserts that his attorney worked under a financial conflict of interest since he had agreed to represent Petitioner in a wrongful termination of employment action against his former employer, Phillips Petroleum Company, if he were acquitted in the criminal case. Petitioner raised this claim in his application for post-conviction relief.  The trial court held an evidentiary hearing to consider the claim. See Dkt. # 12, Ex. 17, Trans. dated January 21, 2004. Petitioner's trial and appellate counsel, Kevin Buchanan, testified at the hearing and acknowledged that he discussed with Petitioner the possibility of filing a wrongful discharge action against Phillips should Petitioner be acquitted in his criminal case.  See id. at 8, 22, 26. He also acknowledged that he did not request a lesser included offense instruction. Id. at 11, 24.  The trial court denied post-conviction relief, finding that "[o]ther than Mr. Hicks' statement . . . regarding Mr. Buchanan's demeanor when they discussed the potential lawsuit against Phillips Petroleum and its possible ultimate damage award, Petitioner produced no evidence regarding [the conflict of interest] allegation." Dkt. # 12, Ex. 2 at ¶ 2. The trial court also determined that "[n]o testimony by Mr. Hicks at trial (or any other evidence at trial) supported an instruction as to either manslaughter or negligent homicide."  Id. at ¶ 4.  The trial court concluded as follows:

> The Court finds as a matter of law that Petitioner has not established that his trial/appellate counsel was ineffective in his representation; the agreed upon strategy at trial was that Lynn Hicks' death was an accident. At the evidentiary hearing January 21, 2004, both Mr. Hicks and Mr. Buchanan acknowledged their trial

> strategy was to convince the jury Mrs. Hicks' death was an accident. Said strategy simply failed.

Id. at ¶ 6.   On post-conviction appeal, the OCCA rejected Petitioner's ineffective assistance of appellate counsel claim, as discussed above, and determined that his other claims could have been, but were not raised on direct appeal and were waived. See Dkt. # 12, Ex. 4. The OCCA made no mention of the conflict of interest claim.

As a preliminary matter, because Petitioner was represented by the same attorney both at trial and on appeal, this Court is not precluded from considering the claim of ineffective assistance of trial counsel based on the OCCA's imposition of a procedural bar.  English v. Cody, 146 F.3d 1257 (10th Cir. 1998) (Oklahoma procedural bar imposed on a claim of ineffective assistance of trial counsel respected only if trial and appellate counsel differ and the ineffectiveness claim can be resolved upon the trial record alone).  Therefore, this Court shall review the claim de novo.

As determined above, Petitioner has failed to convince the Court that the evidence warranted a lesser included offense instruction. As a result, trial counsel did not perform deficiently in failing to request that the jury be instructed on lesser included offenses.  Furthermore, the record before the Court reflects that counsel's trial strategy was to convince the jury that Petitioner's wife died as a result of an accident, see Dkt. # 12, Ex. 9, Tr. Trans. Vol. I at 48-49, and that Petitioner was entitled to an acquittal on the charge of Murder in the First Degree. Petitioner has failed to overcome the presumption that, under the circumstances, counsel's failure to request lesser included offense instructions "might be considered sound trial strategy." See Strickland, 466 U.S. at 689.

Additionally, Petitioner has failed to produce any evidence supporting his allegation that his attorney failed to request a lesser included offense instruction because he had a conflict of interest arising from a verbal agreement reached with Petitioner to represent him in a civil wrongful

termination action against Phillips if he were acquitted in his criminal case. At the evidentiary hearing held in the post-conviction matter, Petitioner's counsel testified that the potential civil lawsuit against Phillips "did not affect my representation of Mr. Hicks in the criminal case in any way." Dkt. # 12, Ex. 17, at 22.  Nothing provided by Petitioner suggests otherwise.  Instead, as discussed above, no lesser included offense instruction was requested by Mr. Buchanan or issued by the trial court *sue sponte* because no evidence presented at trial supported a lesser included offense instruction. In the absence of any evidence supporting this claim, the Court finds Petitioner's ineffective assistance of trial counsel claim based on a conflict of interest lacks merit.  Petitioner is not entitled to habeas corpus relief on his claim of ineffective assistance of trial counsel.

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States.  His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.    The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

2.    This is a final Order for both Case Nos. 04-CV-656-JHP and 04-CV-656-JHP.

3.    A separate Judgment shall be entered in this matter.

DATED THIS 24th of December, 2008.

James H. Payne
United States District Judge
Northern District of Oklahoma